ALD-113                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4347
_____

MICHAEL RAY AQUINO,
                                        Appellant

v.

JAMES T. PLOUSIS, U.S. Marshal, District of New Jersey;
OSCAR AVILES, Director, Hudson County Correctional Center
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 10-cv-01214)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 10, 2011

Before: SCIRICA, HARDIMAN and VANASKIE, Circuit Judges

(filed: February 22, 2011 )
_____

OPINION
_____

PER CURIAM

The Government, acting on behalf of the Republic of the Philippines

("Philippines"), applied to extradite Michael Ray Aquino to the Philippines because of

his alleged involvement in a double murder. Aquino, represented by appointed counsel, challenged the application before a Magistrate Judge. After allowing limited discovery and holding a hearing, the Magistrate Judge granted the Government's application.

Aquino challenged the Magistrate Judge's decision by filing a petition pursuant to 28 U.S.C. § 2241 in the District Court. Still represented by appointed counsel, he argued that the Government had failed to present competent evidence to demonstrate probable cause to believe that he is guilty of conspiracy to commit a double murder. He also claimed that the Government violated Brady v. Maryland, 373 U.S. 83 (1963), when it refused to produce purportedly exculpatory evidence at his hearing. The Government opposed the petition, which the District Court denied. The District Court held that there was not only competent, but also ample, evidence to support the Magistrate Judge's finding of probable cause.

Aquino, now *pro se*, appeals. In his brief in response to our notice of possible summary action, he continues to argue that the evidence is insufficient to establish probable cause. He also argues that the District Court erred by failing to consider important DNA evidence.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We focus our review on the issue of probable cause; that is, whether the Government offered evidence to "support a reasonable belief that [the defendant] was guilty of the crime charged." Sidali v. INS, 107 F.3d 191, 199 (3d Cir. 1997) (citation omitted). In other words, the question is whether the evidence presented was such "to cause a person of ordinary

2

prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." Id. (citation omitted). The standard is the same as for a federal preliminary hearing; that is, a magistrate judge must "determine whether there is competent evidence to justify holding the accused to await trial, . . . not . . . whether the evidence is sufficient to justify a conviction." Id. (citation omitted). Where, as here, a magistrate judge has found probable cause, we must uphold the finding "if there is any competent evidence in the record to support it." Id.

Upon review of the record, we conclude that competent evidence supports the probable cause finding in this case. Accordingly, and because no substantial issue is presented on appeal, we will summarily affirm the District Court's judgment. See L.A.R. 27.4; I.O.P. 10.6.

As the parties are familiar with the facts (which are not in dispute), we will not repeat the Magistrate Judge's thorough recounting of them. However, much like the District Court did, we will highlight the salient facts that support the finding of probable cause.

Aquino, at the time of the alleged crimes, was Chief of the Operations Division of a Presidential Anti-Organized Crime Task Force ("PAOCTF"), which had been formed by Joseph Estrada, then president of the Philippines. Aquino gave the order to begin a discreet investigation of one of the victims, Salvador Bubby Dacer, who had made comments against Estrada. When the first investigator assigned to the project encountered obstacles to sneaking into Dacer's hotel room to surreptitiously search it and

3

obtain documents, Aquino gave him an order to burn or bomb the room. Aquino later transferred the Dacer assignment to someone else, whose first questions to the first investigator included an inquiry about what type of car Dacer had. Dacer and his driver, Emmanuel Corbito, the other victim, were abducted when Dacer's car was surrounded by armed gunmen while it was stopped at a red light.

On the day that the victims were abducted, Aquino notified the first investigator and sent him to meet the second investigator to interrogate Dacer, who was then being held blindfolded and guarded in a van. At the conclusion of the interrogation, Aquino instructed the first investigator to return to base after securing all documents for him. The second investigator told the first that he would take care of things at the scene. Later that evening, Dacer and Corbito were strangled to death. Their bodies were then doused with gasoline and incinerated (the victims were identified through metal dental plates and a ring).

After the presidential administration changed in the Philippines, a senator who had been associated with the PAOCTF warned Aquino that the government was coming after him for the double murders. Aquino fled to the United States in response. The next year, in a Las Vegas hotel, Aquino was heard blaming a colleague for sloppily dumping Dacer's car into a ravine where it was easily discovered. He complained that the task had not been carried out properly.

In short, there is evidence in the record that supports the finding of probable cause. We cannot assign error to the District Court's failure to consider the DNA evidence that

4

Aquino cites because Aquino did not ask the District Court to consider it. Even if Aquino put the DNA evidence before the District Court, and the evidence was of the type the District Court could consider, the result would be unchanged. Aquino argues that a report that bone fragments found at the scene tested negative for human DNA removes the probable cause in this case. However, the same report suggests that it was the extremely charred nature of the samples that prevented a positive identification for human DNA. The report recommends that the sample be sent abroad for testing in labs that routinely conduct mitochondrial DNA sequencing for human identification. Also, according to the record, other physical evidence at the scene, namely metal dental plates and a ring, helped to establish that the remains were Dacer and Corbito. In any event, Aquino's argument on this and other issues in the record are for his trial. While we do not comment on their merits, we note the possibility that his arguments or proofs may ultimately undermine a finding of guilt. They do not, however, undermine the finding of probable cause.

In short, the District Court properly denied Aquino's petition. We will affirm the District Court's judgment.